## AFFIDAVIT OF SPECIAL AGENT ERIC WEINDORF

I, Eric Weindorf, being duly sworn, depose and say that:

1. I am a Special Agent with U.S. Immigration and Customs Enforcement, Homeland Security Investigations ("HSI") and have been so employed for approximately eight years. During the course of my career as a Special Agent with HSI, I have conducted investigations into matters involving counterterrorism, narcotics, weapons violations, document fraud, human trafficking, immigration fraud, and financial crimes, as well as other matters. Prior to my employment with HSI, I was a police officer in Derry, New Hampshire for approximately seven years. I am a graduate of Northeastern University in Boston, Massachusetts with a Bachelor of Science degree in Criminal Justice.

2. I am currently participating in an investigation into Riaz Ali SHAH ("SHAH"). I make this affidavit in support of an application for a criminal complaint charging SHAH with violating 18 U.S.C. § 1425 (Naturalization Fraud).

3. The statements contained in this affidavit are based on my own investigation as well as on information provided to me by others involved in the investigation and information I have gleaned from SHAH's Alien File ("A-File") and from investigative reports, including a report documenting an interview of SHAH. Because I am submitting this affidavit for the limited purpose of obtaining a criminal complaint, I have not included each and every fact known to me concerning this investigation, but only those facts necessary to show probable cause to believe SHAH has violated 18 U.S.C. §1425.

4.  SHAH resides in Brockton, Massachusetts and is a native and citizen of Pakistan. SHAH last entered the United States on or about July 22, 2006, on a C-1 Crewman Non-Immigrant Visa, which permits entry by a foreign national for the purpose of meeting up with a ship and engaging in employment as a crewman on said vessel. SHAH was lawfully admitted to the U.S., however he did not board his assigned vessel and, instead, remained in the U.S. without authorization. On July 16, 2007, SHAH applied for lawful immigration status and was subsequently granted status as a Lawful Permanent Resident ("LPR"). On April 15, 2014, U.S. Citizenship and Immigration Services ("CIS) received SHAH's Application for Naturalization ("Form N-400"). SHAH was eligible to apply to become a citizen based on his presence in the United States as an LPR for at least 5 years. On December 22, 2015, SHAH appeared before a CIS Immigration Officer for an interview to verify the information contained within the N-400. This application is now pending adjudication by CIS.

5.  As explained below, there is probable cause to believe, and I do believe, that SHAH's Form N-400 contains false statements and constitutes an attempt to obtain naturalization based on fraud. Moreover, there is probable cause to believe, and I do believe, that when questioned by an immigration officer about specific aspects of his N-400, SHAH made material false statements under oath and under the penalties of perjury. There is thus probable cause to believe that SHAH has violated 18 U.S.C. § 1425.

## FACTS AND CIRCUMSTANCES

A.  **Background**

6.  On July 17, 2013, federal agents executed search warrants at New York Fried Chicken at 1251 River Street, Boston (Hyde Park), Massachusetts ("NY Chicken"), and at SHAH's residence at 88 Greenlodge Street, Dedham, Massachusetts. SHAH had been identified

as the manager and part owner of NY Chicken. Upon their arrival at the residence, federal agents found SHAH inside of his house. SHAH consented to a non-custodial interview by federal agents. Federal agents conversed with SHAH during subsequent non-custodial interviews as well. During these interviews, among other things, SHAH described his work history and his record of tax payments while living in the United States.

7. SHAH stated that he was 25% owner and manager of NY Chicken and had been so since 2009. According to SHAH, he is responsible for all aspects of the day-to-day operation of NY Chicken, including hiring, licensing, purchasing supplies, record keeping, and paying taxes. According to the corporate tax returns filed with the IRS for NY Chicken for the years 2009-2012, SHAH owns 100 percent of the shares of NY Chicken. On corporate documents filed with the Secretary of State, Commonwealth of Massachusetts, for NY Chicken during the relevant period, SHAH is identified as the president, treasurer, secretary, and director of NY Chicken.

8. Federal agents have interviewed others employed at NY Chicken, some of whom confirmed that SHAH was part owner of NY Chicken and handled day-to-day operations. Federal agents interviewed the tax preparers who prepared and filed employment and income tax returns on behalf of NY Chicken for the tax years 2009 - 2012. Those tax preparers confirmed that SHAH provides all of figures for the NY Chicken tax returns.

9. SHAH told law enforcement agents that income and expense information reported to the IRS on NY Chicken's corporate tax returns was false, because only a portion of the income was reported, the cost of goods was underreported, and payroll was underreported. SHAH said he did not withhold taxes for employees. SHAH also stated that his personal tax returns may not have included all of his income.

10.     SHAH stated that, as the bookkeeper for NY Chicken, he kept two sets of books. One set of books, to which I refer below as "True Accounting Books," reflected the business's actual income and expenses, including payroll. Law enforcement agents seized True Accounting Books of NY Chicken during the searches conducted on July 17, 2013. SHAH stated that he kept another, false set of books at the store, in case he had to produce records for authorities.

### Employment Taxes

11.     The Federal Insurance Contributions Act ("F.I.C.A.") requires employers and employees to pay Social Security and Medicare Taxes. An employee is liable for one half of the required taxes and the employer is liable for the other half. Federal law requires employers to withhold the employee share of the F.I.C.A. taxes from their employees' pay, as well as amounts to be credited toward their employees' federal income tax obligations. Federal law also requires employers to deliver to the IRS their share and their employees' shares of F.I.C.A. taxes, as well as the income taxes withheld from the employees' pay.

12.     Federal tax laws require employers to file with the IRS a Form 941 (Employers Federal Quarterly Tax Return), and a Form 940 (Employers Federal Annual Tax Return), which forms are used to report all federal employment taxes, including F.I.C.A. taxes, as well as income taxes withheld from employees. Employers are required to file Form 941 quarterly and to file Form 940 once per year.

13.     As part of this investigation, IRS Criminal Investigations Special Agent John Doherty has reviewed corporate income tax returns and employment tax returns (Forms 941 and 940) filed on behalf of NY Chicken for the years 2009-2012. He has also reviewed the True Accounting Books of NY Chicken seized pursuant to search warrant. Special Agent Doherty compared NY Chicken's actual payroll, gross receipts, cost of goods sold, and all other expenses

for NY Chicken for the years 2009 to 2012, as recorded in the True Accounting Books, with the payroll and income tax returns filed with the IRS for the same years. That comparison shows that, for each year, gross receipts, cost of goods sold, and all other expenses were significantly underreported. The tax returns for NY Chicken that SHAH filed or caused to be filed for the years 2009-2012 were thus false and resulted in a significant underpayment of required taxes to the United States Government.

14. SHAH thus intentionally misrepresented the gross receipts, cost of goods sold and payroll in an effort to minimize his payroll and corporate income tax liability. According to Special Agent Doherty's calculations, SHAH's misrepresentations resulted in the underpayment of approximately $16,000 in income tax and approximately $122,000 in employment taxes. As the person identified on corporate tax returns as the 100 percent shareholder of NY Chicken, SHAH is personally legally responsible for payment of corporate taxes. As the sole shareholder and corporate officer of NY Chicken, SHAH is personally legally responsible for payment of employment taxes.

B. **SHAH's Application for Naturalization (N-400)**

15. On April 15, 2015, SHAH caused to be filed with CIS an Application for Naturalization (N-400), certifying, under penalty of perjury, that the application and evidence submitted in support thereof were all true and correct. The application is 10 pages in length.

16. Part 10 of the N-400 requires the applicant to answer "Yes" or "No" in response to a number of questions. SHAH answered "No" to the following questions:

- Question 5: Do you owe any Federal, State, or local taxes that are overdue?

- Question 15: Have you ever committed a crime or offense for which you were not arrested?

- Question 23:  Have you ever given false or misleading information to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal?

C.  **SHAH's Naturalization Interview**

17.  On December 22, 2015, SHAH appeared at the CIS office in Boston, Massachusetts for the purpose of completing his citizenship application.  As part of the standardized application process, SHAH was interviewed by Immigration Services Officer Mark Cunha.  Officer Cunha is authorized, under 8 U.S.C. § 1357(b), to administer oaths to applicants for naturalization as part of the application process.  At the beginning of this interview, before any questioning, Officer Cunha placed SHAH under oath.  During the interview, Officer Cunha did a line-by-line review of the N-400 with SHAH and asked SHAH to affirm his answers to each of the questions on the application, including the questions set forth in paragraph 16 above.  SHAW affirmed that each of his answers on the N-400 was accurate.

18.  In addition to the N-400 Application review, SHAH also completed a "Record of Sworn Statement in Affidavit Form" ("Affidavit") in the presence of Officer Cunha.  The Affidavit contained SHAH's answers for the N-400 questions and several other questions, including questions concerning his income, filing of tax returns, and payment of taxes.  The Affidavit's introductory language included the following:

> I, Riaz Ali SHAH, acknowledge that the above-named officer [Mark Cunha] has identified himself to me as an officer of USCIS authorized by law to administer oaths and take testimony in connection with the enforcement of the Immigration and Nationality laws of the United States.  He has informed me that he desires to take my sworn statement regarding my identity.
>
> He has told me that my statement must be made freely and voluntarily.  I am willing to make such a statement.  I swear that I

   will tell the truth, the whole truth, and nothing but the truth, so help me, God.

19. Officer Cunha reviewed each question on the Affidavit with SHAH and recorded SHAH's answers on the Affidavit. He then asked SHAH to review the questions and answers as recorded on the Affidavit. Among other questions, the Affidavit recorded SHAH's response to the following questions. The questions and SHAH's response are as follows:

- Officer Cunha: Have you always declared all of your income to the Internal Revenue Service (IRS) and applicable state agencies?
   - SHAH: "Yes."
- Officer Cunha: Do you owe any Federal, State, or local taxes that are overdue?
   - SHAH: "No."
- Officer Cunha: Have you ever committed a crime or offense for which you were not arrested?
   - SHAH: "No."
- Officer Cunha: Have you ever been arrested, cited, or detained by any law enforcement officer including immigration officials or military officers?
   - SHAH: "No."
- Officer Cunha: Have you ever given false or misleading information to any U.S. Government official while applying for any immigration benefit?
   - SHAH: "No."

20. After reviewing questions and answers as recorded on the Affidavit, SHAH signed the Affidavit, immediately below the printed statement: "I certify, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

21. At the conclusion of the interview, SHAH signed the N-400 (Part 13), affirming under the penalties of perjury that the information on his N-400 was correct. Officer CUNHA asked SHAH to read the perjury warning prior to signing.

## CONCLUSION

19. Based on all the foregoing there is probable cause to believe that, on February 19, 2014 and on December 22, 2015, RIAZ ALI SHAH knowingly attempted to procure, contrary to law, naturalization, in violation of 18 U.S.C. § 1425(a). I certify that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed at Boston, Massachusetts, this 12th day of April, 2016.

Eric Weindorf
Special Agent
Homeland Security Investigations

Sworn to before me this 12th day of April, 2016, under the pains and penalties of perjury, at Boston, Massachusetts.

David H. Hennessy
United States Magistrate Judge